NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JUAN BAUTISTA DELEON, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 03-1843 (KSH) |
| v. | ) | |
| | ) | **OPINION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**KATHARINE S. HAYDEN, U.S.D.J.**

Juan Bautista DeLeon, a/k/a Enrique Luciano ("Petitioner" or "DeLeon"), pleaded guilty to conspiracy to distribute more than 50 grams of crack cocaine in violation of 21 U.S.C. § 846. DeLeon has petitioned the Court to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel.

**BACKGROUND**

On February 6, 2001, a federal Grand Jury returned a one-count Indictment charging Petitioner with conspiracy to distribute and possess with intent to distribute more than 50 grams of cocaine base ("crack" cocaine), contrary to 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. He pleaded guilty on February 19, 2002 to conspiracy to distribute crack cocaine in violation of 21 U.S.C. § 846.

Petitioner was sentenced on August 1, 2002 to an 87 month term of imprisonment with five years of supervised release. Because the Court found that Petitioner was eligible for the

"safety valve" provision under 18 U.S.C. § 3553(f) and United States Sentencing Guidelines § 5C1.2, he received a sentence below the mandatory statutory minimum of ten years under 21 U.S.C. § 841(b)(1)(A).  The Judgment of Conviction was entered on August 1, 2002.  Petitioner did not file a direct appeal.

Throughout this process, Petitioner was represented by Clifford E. Lazzaro, Esq ("Lazzaro").

As an initial matter, this Court reviews the Petition for timeliness.  The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that a one-year period of limitation applies to a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255.  See 28 U.S.C. § 2244(d)(1).  Section 2255 states, in relevant part, that the limitation period shall run from "the date on which the judgment of conviction becomes final . . . ." 28 U.S.C. § 2255 para. 6.  A "'judgment of conviction becomes final' on the later of (1) the date on which the Supreme Court affirms the conviction and sentence on the merits or denies the defendant's timely filed petition for certiorari, or (2) the date on which the defendant's time for filing a timely petition for certiorari review expires."  See Kapral v. United States, 166 F.3d 565, 577 (3d Cir. 1999).  If a defendant does not pursue a timely direct appeal, his/her conviction and sentence become final, and the limitations period begins to run, on the date on which the time for filing such an appeal expired.  Id.

Based on the date the Judgment of Conviction was entered, Petitioner had 10 days, or until August 11, 2002, to file a direct appeal.  See Fed. R. App. P. 4(b)(1)(A)(I).  Petitioner timely filed his § 2255 Petition on April 24, 2003.

**STANDARD OF REVIEW**

A prisoner in federal custody may "move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C.A. § 2255. The court must grant habeas relief if it finds any one of the following errors: (1) the judgment was rendered without jurisdiction; (2) the sentence was not authorized by law; (3) the sentence was otherwise open to collateral attack; or (4) there was a denial or infringement of the prisoner's constitutional rights. 28 U.S.C.A. § 2255. Here, petitioner seeks relief based upon an alleged constitutional violation, specifically that he was denied effective assistance of counsel.

To establish a claim for ineffective assistance of counsel, petitioner must satisfy the two-prong test established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).

Under the first prong of Strickland, a petitioner must demonstrate that counsel's performance was deficient. Id. at 687. In order to prove deficient performance, the petitioner must show his lawyer's representation "fell below an objective standard of reasonableness." Williams v. Taylor, 529 U.S. 362, 390-91 (2000) (quoting Strickland, 466 U.S. at 687-88). Counsel's assistance is measured against a standard of "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," Id. at 689, and a court deciding such a claim "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Zettlemoyer v. Fulcomer, 923 F.2d 284, 295 (3d Cir. 1991); Wiggins v. Smith, 539 U.S. 510, 523 (2003) (stating that an evaluation of counsel's performance must include "a context-dependent consideration of the challenged conduct as seen 'from counsel's perspective as the time'") (*quoting* Strickland, 466 U.S. at 689). The burden is on the

3

petitioner to "identify acts or omission of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690.

The second Strickland prong requires a petitioner to "show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 693. To establish prejudice, a petitioner must show a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. Duncan v. Morton, 256 F.3d 189, 201-02 (3d Cir.), cert. denied, 534 U.S. 919 (2001).

Because a petitioner must demonstrate both deficient performance and resulting prejudice, "there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697.

**DISCUSSION**

Petitioner claims he was denied effective assistance of counsel because Lazzaro did not (1) file a notice of appeal; (2) argue the government's improper sentence manipulation; (3) argue for a sentence reduction under United States Sentencing Guideline § 3B1.2; (4) challenge the violation of Rule 32; and (5) render effective assistance when Petitioner was no longer able to afford his services.

**Ineffective assistance of counsel claim due to counsel's failure to file a notice of appeal**

Petitioner argues that Lazzaro did not file a notice of appeal on his behalf even though he "instructed and requested [him] to file a notice of appeal immediately after the sentencing hearing in this case." (Petition at 5.) In opposition, the government maintains that his claim "is not substantiated other than his blanket claim in his moving papers."

4

Notwithstanding, in Solis v. United States, 252 F.3d 289, 293-95 (3d Cir. 2001), the Third Circuit held that district courts generally should hold evidentiary hearings in § 2255 proceedings to resolve disputed factual issues between defendants and their former attorneys. On March 29, 2005, the Court held a Solis hearing, at which Petitioner and Lazzaro gave testimony.

The decision to file an appeal is Petitioner's and counsel must complete this "purely ministerial task" even if he disagrees with his client's decision. See Anders v. California, 386 U.S. 738, 744 (1967). If petitioner asked his attorney to file an appeal and his attorney failed to do so, counsel's performance is ineffective under Strickland. However, an essential ingredient of Petitioner's claim is that *he must have requested his counsel to file an appeal*. If Petitioner never asked his attorney to pursue the option of appeal, the lawyer need not file a notice of appeal. See Solis, 252 F.3d at 29; Castellanos v. United States, 26 F.3d 717, 719 (7th Cir. 1994).

Based upon the evidence adduced at the Solis hearing, Court finds that Petitioner did not ask Lazzaro to file a notice of appeal. In relevant part, when government counsel questioned Petitioner, the transcript ("Tr") from the hearing reveals:

> Q . . . and you asked [Lazzaro] whether he could help you with something, maybe filing an appeal?
> A: Pretty much. Because I feel that if he had intentions to help me that's the first thing he would have been done.
> Q: But you never instructed him to file a notice of appeal, did you?
> A: I don't remember whether I specifically put it that way. I know I asked him to help me with something in any way. I don't remember whether I used those words.
> . . . .
> Q: And you understood that you could have filed a notice of appeal if you wanted to yourself, isn't that right?
> A: I did not know at the time about any of this –these processes. I did not understand anything. It was – it was not until I arrived at this prison that I conferred with a gentleman that's here as an inmate, he happens to be now in the room here with me, and he was telling me what I could do.

5

> Q: You will recall, won't you that at the sentencing, at the very end the Judge did inform you and I'll read directly from the transcript. "Mr. DeLeon, you have the right to appeal this sentence and if you are not able to pay you may request the Clerk of the Court to file a notice of appeal on your behalf." Do you recall that?
> A: I don't remember. I don't remember. But I know that I did not know anything then about this processes. So I know that I told the lawyer and he didn't say anything to me.
> Q: And you never indicated to the Court at that time that you did not understand your right as it was explained to you by the Court?
> A: At the time I was not paying much attention. The way I felt with what was happening I just was not paying much attention. But I feel that if the attorney had told me.

(Tr. at 22:11-24:5.)

"[I]n order to show that appellate counsel was constitutionally deficient in not filing an appeal, the defendant *must* demonstrate that he asked to have an appeal filed." (emphasis added). McHale v. United States, 175 F.3d 115, 119 (2d Cir. 1999). The testimony of Petitioner does not establish that he asked Lazzaro to file a notice of appeal. This is consistent with Lazzaro's testimony, in which he flatly denied that Petitioner instructed him to file a notice of appeal. (Tr. at 17:25-18:2). The Court is not confronted with a swearing contest on this issue – Petitioner simply has no evidence to support his claim and it is dismissed.

**Ineffective assistance of counsel claim due to counsel's failure to argue sentence manipulation**

Petitioner argues that his "sentence was improperly increased by the government, and, thus, the government manipulated Petitioner's sentence" but "counsel failed to present this argument to the Court at sentencing." (Petition at 5.) Basically, Petitioner argues that there was an additional "sting" operation directed by government solely to "manipulate his sentence into a statutory range of 10 years to life, along with a desire to increase his guideline range." (Petitioner Moving Br. at 5.) Petitioner argues that Lazzaro's failure to raise a claim of sentence

6

manipulation demonstrates ineffective assistance, on the theory that had this issue been argued on his behalf, his sentence may have been different. Id.

"Sentencing entrapment" may occur when the "government improperly causes a defendant initially predisposed to commit a lesser crime (e.g., sell a smaller quantity of drugs or produce less counterfeit money) to commit a more serious offense." United States v. Okey, 47 F.3d 238, 240 n.3 (7th Cir. 1995). "Sentence factor manipulation" may be found when the "government engages in improper conduct that has the effect of increasing a defendant's sentence." Id. at 240.

To begin with, as an over-arching legal matter, the Third Circuit has not adopted either the doctrine of "sentence manipulation" or "sentence factor manipulation" and many other courts have rejected the doctrines or shown great skepticism about them. See United States v. Raven, 39 F.3d 428, 438 (3d Cir. 1994) ("We have not as yet had occasion to address the theory of sentencing entrapment . . . and we do not do so today . . . ."); United States v. Kaczmarksi, 939 F. Supp. 1176 (E.D. Pa. 1996) (citing cases that have discussed sentence factor manipulation). As such, Lazzaro's failure to make sentence manipulation or sentence factor manipulation a basis for seeking relief on Petitioner's behalf hardly demonstrates incompetence for purposes of Sixth Amendment review.

Second, on the merits (which need not be addressed, but for completeness will be), the Court does not find government misconduct in the charge made against Petitioner. He stipulated in his plea agreement that "[t]he defendant's offense and all relevant conduct involved more than 150 grams of cocaine base, but less than 500 grams of cocaine base." (Plea Agreement, Schedule A ¶ 1.) Perforce, based on this stipulated weight, he faced a mandatory minimum 10-year

sentence.  In this Circuit, stipulations in plea agreements are considered binding.  Cupak v. United States, No. 01-2628, 2002 WL 31412507, at *2 (3d Cir. Oct. 28, 2002) (holding that defendant could not appeal his sentence as he was bound by the stipulations incorporated into his plea agreement); United States v. Brown, No. 00-2613, 2002 WL 1354690, at *2 (3d Cir. June 21, 2002) (precluding defendant from attempting to contradict his sentencing stipulation); United States v. Feng Chen, No. 00-2361, 2002 WL 229693, at *2 (3d Cir. Feb. 15, 2002) (refusing to allow defendant to repudiate a stipulation to which he agreed).  Petitioner has not challenged the voluntariness of his plea, and his agreement as to the weight of the drugs involved in his offense contradicts his effort in this collateral attack on his sentence to demonstrate that, somehow, the government engaged in the "extraordinary misconduct" required to demonstrate sentence manipulation.  Kaczmarksi, 939 F. Supp. at 1181.  His claim of ineffective assistance of counsel based on sentence manipulation or sentence factor manipulation is dismissed.

**Ineffective assistance of counsel claim due to counsel's failure to argue a sentence reduction under United States Sentencing Guideline § 3B1.2 (Role in the Offense)**

Petitioner argues ineffective assistance of counsel based on Lazzaro's "failure to properly argue for a reduction in the Petitioner's sentence based on a downward adjustment for minor role in the offense, pursuant to U.S.S.G. § 3B1.2."[1]  (Petition at 5.)

In the plea agreement, the government and Petitioner stipulated that "The defendant's offense and all relevant conduct involved more than 150 grams of cocaine base, but less than 500 grams of cocaine base.  Accordingly, the applicable guideline is U.S.S.G. § 2D1.1(c) (3) and the base offense level is 34."  (Plea Agreement, Schedule A ¶ 1.)  The government and Petitioner

---

 A minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.  See United States Sentencing Guideline 3B1.

further stipulated to the factors eligible for a safety valve adjustment. (Plea Agreement, Schedule A ¶¶ 2-4.) There is no language in the plea agreement contemplating a downward adjustment for a minor role.

Petitioner did not appeal his sentence (and lack of a downward adjustment for a minor role) directly to the Third Circuit. When Petitioner failed to file a direct appeal within the appropriate time frame, his conviction became final. "Once the defendant's chance to appeal has been waived or exhausted . . . we are entitled to presume he stands fairly and finally convicted . . . ." United States v. Frady, 456 U.S. 152, 164 (1982). Citing a number of cases, the Frady decision expressly noted that "a final judgment commands respect. For this reason, we have long and consistently affirmed that a collateral challenge may not do service for an appeal." Id. at 165.

Although Petitioner presents his claim as one for ineffective assistance of counsel, the Court finds that Petitioner's claim is a straight attack on his sentence, one that should have been raised through a direct appeal.

Nevertheless, nothing in the record suggests that Petitioner should have received a downward adjustment for a minor role. Petitioner's criminal activity as the supplier of cocaine base negates eligibility for a minor role adjustment. The Third Circuit has held that "the fact that a defendant's participation in a drug operation was limited to that of a courier is not alone indicative of a minor or minimal role." United States v. Headley, 923 F.2d 1079, 1084 (3d Cir. 1991); see United States v. Isaza-Zapata, 148 F.3d 236, 242 (3d Cir. 1998) ("[A] courier is not automatically entitled to a minor role adjustment."). Paragraph 44 of the Pre-Sentence Report ("PSR") states that Petitioner was "aware[] of the nature and scope of the criminal enterprise" in

9

which he engaged, undisputed information the Court was free to use at sentencing. Paragraph 44 goes on to state that "While the probation office is not assessing DeLeon with a mitigating or an aggravating role, the Court should take into consideration his role as the supplier of the cocaine base when deciding where within the guideline range to sentence him." Additionally, the calculations of sentencing level in the PSR make no adjustments for role. Paragraph 55 under "Offense Level Computation" states: "Adjustments for Role in the Offense: None." Petitioner did not object to either the information, the PSR's interpretation of it, or the guidelines calculations. As such, the Court's decision to accept the sentencing calculations cannot be seen as working to petitioner's ultimate and substantial disadvantage. See Henry v. United States, 913 F. Supp. 334, 336 (M.D. Pa. 1996) (quoting O'Hallaran v. Ryan, 704 F. Supp. 70, 74 (E.D. Pa. 1989), aff'd, 96 F.3d 1435 (3d Cir. 1996)) (stating that for purposes of the "cause and prejudice" standard applicable when a petitioner collaterally challenges a sentence without first filing a direct appeal, petitioner "must show that the trial judge's error did more than create a possibility of prejudice: the error must be shown to have 'worked to his actual and substantial disadvantage'").

In short, Petitioner does not establish grounds for eligibility for a role adjustment under U.S.S.G. § 3B1.2, and Lazzaro's failure to argue that issue cannot be deemed ineffective assistance. This claim is dismissed.

**Ineffective assistance of counsel claim due to counsel's failure to challenge a violation of Rule 32**

Petitioner argues that he "did not review the PSR within the time limits set forth by Rule 32, and the Court failed to assure that the Petitioner had reviewed it as required under 18 USC §

10

3552(d)" and Lazzaro "failed to inform the Court or the Petitioner of this violation." (Petition at 6.)

The sentencing transcript indicates that the Court specifically asked Petitioner if he had reviewed the PSR and Petitioner responded affirmatively. In relevant part, the transcript states:

> THE COURT: Is there any dispute, Mr. Lazzaro, on the part of you or your client with the calculations that I have set forth in which are those that appear on pages 11 and 12 of the Presentence Report?
> LAZZARO: Judge, let me address your question in the following manner. I think I have to at this juncture. We initially submitted a letter to probation wherein we advised probation as of April 30, 2002, that the defendant had no objection to the Presentence Investigation Report.
> THE COURT: Let me ask Mr. Deleon if he himself has received and reviewed that report. Mr. Deleon, I have in front of me a Presentence Report and it appears to have been sent out on May 1, 2002, in final form. That's not the first time that it was distributed, my understanding is that a draft report was sent out and that your attorney furnished it to you; is that correct, sir?
> THE DEFENDANT: Yes.
> THE COURT: And when you got the draft report did you read it over?
> THE DEFENDANT: A little bit. Because I did not have an interpreter.
> THE COURT: Okay. When you got the final report, some time in May; did you read that?
> THE DEFENDANT: Yes.
> THE COURT: Okay. And did you have an opportunity to discuss the final report with Mr. Lazzaro, your lawyer?
> THE DEFENDANT: The only thing I want to say that was wrong is that the PSR says that I am a native of Columbia. I am Dominican. I was born in the Dominican Republic. . . .
> THE COURT: Anything else?
> THE DEFENDANT: No, that's all right.

(Tr. at 4:24-6:22.)

The sentencing transcript directly contradicts Petitioner's current arguments, and this claim is dismissed.

**Ineffective assistance of counsel due to counsel's conflict of interest**

Petitioner argues that Lazzaro "was under a conflict of interest due to his lack of desire to

11

represent the Petitioner after he learned that Petitioner could not pay his additional monies."
(Petition at 6.)  Petitioner offers only a conclusory statement to back up this claim, and fails to show how any "lack of desire" on his attorney's part affected the outcome.  Lazzaro met each Court deadline, appeared in court when required.  Petitioner has failed to demonstrate that his representation was deficient.  This claim is dismissed.

**Petitioner's Motion to Amend**

Petitioner filed a Motion to Amend on August 4, 2004 that argues that his sentence was imposed in violation of Blakely v. Washington, 124 S. Ct. 2531 (2004), which is now cognizable as an argument to be governed by the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005).  The Third Circuit recently held in Lloyd v. United States, No. 04-3549, 2005 U.S. App. LEXIS 8699 (3d Cir. May 17, 2005), that the rule of law announced in Booker does not apply "retroactively to prisoners who were in the initial § 2255 motion stage as of the date that Booker issued."  Id. at *1.  Accordingly, Booker does not apply retroactively to motions filed under § 2255 where the judgment being attacked was final as of January 12, 2005, the date Booker issued.  Here, the final judgment was entered on August 1, 2002, almost two and a half years before the Booker decision.  In light of Lloyd, the Petitioner's Motion to Amend must be denied as futile.

**CONCLUSION**

For the reasons stated above, this petition is denied.  Because the Court finds Petitioner has not made any substantial showing of the denial of constitutional rights pursuant to 28 U.S.C. § 2253(c), a certificate of appealability will not be issued.

Date: June 24, 2005                                              /s/ Katharine S. Hayden
                                                                          Katharine S. Hayden, U.S.D.J.

13